**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America ex rel.** | ) | |
| **RORY COOK,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14 C 5830** |
| | ) | |
| **MARK WILLIAMS, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

After a jury trial in the Circuit Court of Cook County held in 2000, Rory Cook was convicted of first-degree murder and sentenced to a thirty-year prison term. Cook's conviction and sentence were upheld on appeal. *See People v. Cook*, 352 Ill. App. 3d 108, 815 N.E.2d 879 (2004). In 2014, Cook filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Court then granted Cook's motion to stay proceedings pending the disposition of ongoing post-conviction proceedings in state court. In 2022, the state court proceedings concluded, and the Court lifted the stay. For the reasons stated below, the Court denies Cook's petition.

**Background**

The Court takes the relevant facts from the state appellate court's decision, which are presumed correct under 28 U.S.C. § 2254(e)(1). Cook was charged with first-degree murder of Brian Keith Bell based on two alternative theories: "shooting Bell intentionally or acting with the knowledge that he created a strong probability of death or

great bodily harm." *Cook*, 352 Ill. App. 3d at 111, 815 N.E.2d at 883. At 10:30 pm on April 3, 1999, Chicago police responded to a report of gunfire at an apartment building. When they arrived, they observed Cook on top of Bell, strangling him. An officer pulled Cook off Bell, and Bell told the officer repeatedly that Cook had shot him. When another officer asked where the gun was, Bell responded that Cook "gave it to his boy who ran into the building." *Id.* at 116, 815 N.E.2d at 887. Cook was taken to the police station for interrogation, where he made multiple incriminating statements.

**A.    Cook's motion to suppress**

Before trial, Cook moved to suppress the incriminating statements that he had made to the police. In his motion, he contended that he was not informed of his *Miranda* rights and that he was told he would only be charged with aggravated battery. At the motion hearing in the state trial court, Chicago police officer Robert Hodges testified that his partner informed Cook of his *Miranda* rights while transporting him to the police station. Hodges observed that Cook's clothing was bloody and that his eye was injured. Two other officers, David Zacek and Sylvia Van Witzenburg, testified at the hearing that they interviewed Cook after advising him of his *Miranda* rights. Zacek testified that Cook denied involvement, and Van Witzenburg testified that Cook gave her an inconsistent account. A fourth officer, Robert Bartik, testified that he gave Cook *Miranda* warnings in preparation for a polygraph examination. Bartik testified that before the polygraph examination began, Cook made incriminating statements to him and another officer. The polygraph examination was not given. Lastly, assistant state's attorney Tom Key testified that he and Van Witzenburg interviewed Cook. Before the interview, Key testified that he asked Cook if he had been read his *Miranda* rights, and

2

Cook said that he had.  Key testified that he then readvised Cook of his rights.  At the conclusion of the interview around 5:30 am on April 5, Key testified that Cook wanted to make a statement handwritten by Key.  After Cook signed a pre-printed form listing the *Miranda* warnings, Key wrote down Cook's statement.  None of these witnesses testified that Cook invoked his *Miranda* rights at any point during questioning.

Cook testified at the motion hearing that Bell had struck him in the head with a hammer and that he had injured his eye when he hit the pavement.  He stated that his head was bleeding and that he was dazed.  He further testified that after being transported to the police station, he told the first detective who asked to speak with him that he wanted a lawyer.  Cook recounted that the first detective left without responding, and then two other officers spoke to him without informing him of his *Miranda* rights. Cook testified that he then asked to see the first detective, provided her with a statement, and then passed out.  The following day, he testified that he was transported to take a polygraph test.  He stated that he told the detective there that he did not want to take the test without an attorney present.  Lastly, Cook testified that when he met with Key, Key did not identify himself as an assistant state's attorney and did not read him his *Miranda* rights.  He acknowledged that he signed his statement that Key handwrote and initialed each page, but he testified that he only did so because he thought he would not have a fair trial otherwise.  He also conceded that he signed a waiver of his *Miranda* rights but explained that he was in pain when he signed and could not read the waiver because of his eye injury.

After hearing the evidence, the state trial court credited the state's witnesses and denied Cook's motion to suppress his inculpatory statements.

**B.    The trial**

Cook's case proceeded to trial in November 2000.  At trial, Cook's girlfriend Hunt, Key, and several police officers, including Van Witzenburg, testified for the prosecution. Bartik did not testify at trial.

Hunt testified that she lived with Cook at the apartment building where the shooting took place.  She testified that earlier that evening, she heard Cook fighting with Bell across the street and that Bell had a hammer.  Cook returned to their apartment bleeding.  Later that evening, she was with Cook and his friends, Darryl Bunch and Garrett Scruthens,[1] when she heard Bunch and Cook discussing Bell.  According to Hunt, Bunch told Cook that Cook "should have popped him—he should pop him."  Dkt. no. 127-2 at 87:14–15.  Bunch then pulled out a gun, removed the bullets, reloaded it, and placed it on the table.  Cook responded that "he would if" Bell kept messing with him and that if Bell started causing problems, he "was going to put [Bell] to sleep."  *Id.* at 90:6, 92:13–14.  Hunt testified that Cook then put the gun in his back pocket.  Hunt stated that after Scruthens left and Cook went to lock the door, she heard Cook and Bell arguing again.  Cook pulled out the gun and then Cook and Bell fought over it.  Hunt turned away to go up the stairs and heard gunshots.

Several police officers testified at trial regarding Cook's post-arrest statements. Chicago police officer Paul Bernatek testified that on April 3, Cook told him and Van Witzenburg that Bell took the gun from him and shot himself five times.  Bernatek testified that about two hours later, Cook stated that he shot Bell and that Bell was

---

[1] Garrett Scruthens's name is spelled in various ways in the state court record.  The Court adopts the spelling used by the Illinois appellate court in its opinion on direct appeal.

unarmed. Officer Robert McVicker testified that the following day, Cook told him that "he had lied and wanted to tell the truth." Dkt. no. 127-3 at 28:24–29:1. According to McVicker, Cook said that he went with Bunch to his apartment to get Bunch's gun. After they returned to Cook's apartment with the gun, Bunch loaded it and gave it to Cook, telling him that he should shoot Bell if Bell fought him again. McVicker testified that Cook confessed to shooting Bell three times. Both Van Witzenburg and Key testified that they interviewed Cook and that Cook stated that Bunch gave him a loaded gun, he decided to shoot Bell if Bell fought with him again, and then he did shoot Bell when they fought later that evening. He also consistently stated that Bell was unarmed. Cook's signed statement handwritten by Key was read into evidence at trial.

The prosecution presented the testimony of forensic investigator Joseph Dunigan through a stipulation by the parties. The parties stipulated that Dunigan would testify that he performed a gunshot residue test on Cook, Hunt, and Bell. It was further stipulated that another forensic scientist would testify that finding gunshot residue is consistent with either handling, discharging, or being in close proximity to a discharged firearm. The parties stipulated that the forensic scientist would testify that Bell had gunshot residue on his right hand and Cook had gunshot residue on his left hand.

The parties also stipulated that Dr. Matthew Areford, a medical examiner who performed the autopsy of Bell, would testify that Bell had gunshot wounds in his abdomen and right hand. Dr. Areford would testify that examination of the wounds "revealed no evidence of close-range firing." Dkt. no. 127-2 at 203:1–2, 20–22. It was further stipulated that it would be Dr. Areford's opinion that Bell "died of multiple gunshot wounds, and the manner of death was homicide." *Id.* at 204:7–9.

5

During a lunch recess at trial before this stipulation was read, the parties raised to the state trial court an issue they had regarding whether the stipulation should include evidence of five old bullets found in Bell's body. The prosecution sought a ruling from the trial court that the old bullets were inadmissible as irrelevant to Cook's theory of self-defense. The court agreed with the prosecution that the bullets were irrelevant and excluded the evidence of Bell's preexisting gunshot wounds. Defense counsel did not seek a continuance based on this ruling, and the trial proceeded.

The defense case consisted of Cook's testimony. Cook testified that Bell fought him around 6 pm on April 3 and injured him with a ring of keys. Cook stated that later that evening, he went with Bunch to his house so that Bunch could call his girlfriend. When they returned to Cook's apartment, Cook testified that he left the room and returned to see a gun on the table. He testified that he grabbed the gun when he heard his apartment building's door being kicked open but that he did not know whether the gun was loaded. When Cook went to close the door, Bell came up the stairs and hit him on the head with a hammer. Cook testified that after further fighting, he pulled the gun out and held it up to scare Bell. According to Cook, Bell grabbed the gun, and during their struggle for the weapon, it fired. He stated that he did not know who had been shot. He recounted that somebody then took the gun from his hand. He explained that because he did not know who had the gun, he continued to hold Bell down.

Cook testified that after he was arrested, he asked assistant state's attorney Key for a lawyer but was told that there were not any lawyers available. He admitted that he signed the statement after Key read it to him, but he testified that the statement was made up and that he signed it only because he was exhausted.

6

After Cook's testimony, the defense rested.  The prosecution did not offer any rebuttal testimony.  The jury was instructed on first-degree murder, second-degree murder, and involuntary manslaughter.  The jury found Cook guilty of first-degree murder, and the trial judge later sentenced Cook to thirty years in prison.

## C.     State appellate and post-conviction proceedings

Cook appealed his conviction and sentence, contending that, among other errors, the trial court erred in denying his motion to suppress "because of the duration of his questioning and because he was not adequately informed of his *Miranda* rights during the multiple interviews."  *Cook*, 352 Ill. App. 3d at 119, 815 N.E.2d at 889.  The Illinois appellate court affirmed, holding that Cook's "inculpatory statements were voluntary and were not obtained in violation of *Miranda*."  *Id.* at 122, 815 N.E.2d at 892. The court found that because Cook was given *Miranda* warnings on multiple occasions and signed a written waiver of his *Miranda* rights, he "was fully informed of his *Miranda* rights and knowingly and intelligently waived those protections."  *Id.* at 121, 815 N.E.2d at 891.  The court also held that his statements were not involuntary due to his injuries. The court reasoned that because "the record indicates that [Cook] received pain reliever and a bandage for his cut," his wounds were not as severe as he claimed.  *Id.*  The court explained that this finding was also supported by Cook's testimony that he refused medical treatment when it was offered to him by the jail intake officer.  Finally, the court noted that Cook did not contend that any "officers told him he would not receive treatment unless he confessed."  *Id.* at 122, 815 N.E.2d at 891.

Cook filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, which that court denied on November 24, 2004.  *See People v. Cook*, 212 Ill. 2d 539,

7

824 N.E.2d 286 (2004). Cook did not file a petition for a writ of certiorari in the United States Supreme Court.

On May 4, 2005, Cook filed a *pro se* post-conviction petition. In the petition, he alleged, among other things, that he "was not afforded a continuance in the wake of the State's motion to suppress on the day of trial" and that his "trial and appellate attorneys were ineffective for not investigating the source of the deceased's five pre-existing bullet wounds." Dkt. no. 127-7 at 2. In 2009, assistant public defender Bruce Landrum was appointed to represent Cook in his post-conviction proceeding.

In 2010, Cook filed a *pro se* motion asking the state trial court to appoint new counsel because Landrum was not properly consulting with him. Cook attached to his motion several affidavits from his friends and family stating that they wanted to testify about his character at his sentencing hearing but were not given the opportunity by his trial counsel. The trial court denied Cook's motion. Landrum did not amend Cook's petition or file a supplemental petition because he concluded that Cook's *pro se* petition adequately presented his claims. The trial court ultimately dismissed Cook's petition.

On appeal, Cook argued that the petition should be remanded because his post-conviction counsel should have added the claim that Cook's trial counsel was ineffective for failing to present mitigating witnesses at his sentencing hearing. The Illinois appellate court affirmed the dismissal of Cook's petition, holding that Cook's post-conviction counsel provided reasonable assistance. *See People v. Cook*, 2013 IL App 111551-U, 2013 WL 3340707, ¶ 16. The court found that Cook's motion for new counsel did not raise the issue of ineffective assistance of counsel at sentencing. *See id.* ¶ 18. The court reasoned that even if it did, Cook's post-conviction petition did not

raise the issue, and post-conviction counsel was therefore not required to add the claim. *See id.* ¶ 19. The Illinois Supreme Court denied Cook's PLA on September 23, 2013. *See People v. Cook*, 996 N.E.2d 18 (Ill. 2013).

Cook also filed several other collateral challenges to his conviction. In May 2011, Cook filed a petition for relief from judgment under 735 ILCS 5/2-1401, a motion for DNA testing under 725 ILCS 5/116-3, and a motion in arrest of judgment under 725 ILCS 5/116-2. The state trial court denied all three motions in September 2011. In March 2013, the appellate court held that it lacked jurisdiction to consider the motion in arrest of judgment because it was untimely. See *People v. Cook*, 2012 IL App 113196-U, ¶ 6 (dkt. no. 127-19). In April 2013, the appellate court summarily affirmed the dismissal of the remaining motions, noting that Cook "failed to comply with the filing requirements of section 2-1401." *See People v. Cook*, 2013 IL App 113196-U, ¶ 3 (dkt. no. 127-20). The Illinois Supreme Court denied Cook's PLA.

In July 2012, Cook sought leave to file a successive post-conviction petition. Cook alleged that Bartik fabricated his confession, attaching news articles and court documents to show that Bartik had a pattern of fabricating confessions in the same way that Cook contends he did in his case. The state trial court denied leave to file the petition, holding that Cook failed to satisfy the "cause and prejudice test" required by 725 ILCS 5/122-1(f) to file a successive petition. *See* Dkt. no. 127-24 at 12. The appellate court affirmed, holding that although Cook established cause, he could not establish prejudice. *See People v. Cook*, 2015 IL App 123236-U, 2015 WL 728561, ¶ 15. The court noted that Cook had "provided the courts with a moving target in order to suit his expediencies." *Id*. ¶ 16. Specifically, he alleged "that Bartik fabricated *the*

*fact* that he confessed," that "Bartik created a false *narrative* and made him repeat it," and that Cook did confess but only because Bartik coerced him, which the court noted were all "mutually exclusive" positions. *Id.* The Illinois Supreme Court denied Cook's PLA.

In August 2013, Cook filed a post-trial motion based on prosecutorial misconduct, which the state trial court dismissed as untimely. The appellate court affirmed. Cook filed a petition for writ of mandamus in August 2014 and a second motion for DNA testing in July 2015. The state trial court denied both motions, and the appellate court affirmed. Cook filed a PLA only for the second motion for DNA testing, which the Illinois Supreme Court denied in 2018.

In August 2015, Cook filed a second section 2-1401 petition, alleging that via a FOIA request he had discovered new evidence that shows that the prosecution's forensic experts had failed to match the bullets found in Bell's body to the purported murder weapon at trial. The alleged new evidence consisted of Illinois State Police Forensics Division ballistics reports and records created in 1999. The state trial court dismissed the motion, holding that it was untimely and that the stipulations at trial suggested that the defense was already aware of the evidence. The appellate court summarily affirmed, and the Illinois Supreme Court denied Cook's PLA. Cook also filed a motion for leave to file a successive post-conviction petition based on this forensic evidence in June 2015. The state trial court denied the motion in 2018, and the appellate court summarily affirmed in 2020. Cook did not file a PLA.

In December 2015, Cook filed a motion for a new trial based in part on the same allegedly new forensic evidence. The trial court recharacterized the motion as a request

to file a successive post-conviction petition and denied it. The appellate court reversed and remanded because the trial court failed to first admonish Cook before recharacterizing his motion. On remand, Cook told the trial court that he did want his motion to be recharacterized. He also filed another motion for leave to file a successive post-conviction petition in August 2019. In February 2020, the trial court denied leave to file both petitions. The appellate court summarily affirmed. Cook did not file a PLA.

In 2017 and 2020, Cook filed two more motions for leave to file successive post-conviction petitions. The 2017 motion was again based on the forensic evidence. The state trial court denied the motion, and the appellate court summarily affirmed. The Illinois Supreme Court then denied Cook's PLA. In the 2020 motion, Cook claimed that his trial counsel provided ineffective assistance by failing to call Scruthens as a witness. He alleged that he did not bring this claim sooner because he only received Scruthens's signed statement to investigators from 1999 in March 2020. The state trial court denied this motion as well on the ground that Cook failed to satisfy the cause and prejudice test. The appellate court affirmed, holding that Cook could not show cause. The court reasoned that because Cook was with Scruthens before the shooting, he knew before his initial post-conviction petition that Scruthens could have been a witness for him. Further, Cook's own motion stated that Scruthens had been listed as a potential prosecution witness during discovery. The Illinois Supreme Court denied Cook's PLA this motion as well.

## D.    Federal habeas proceedings

On July 28, 2014, Cook filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. In October 2014, the Court granted Cook's motion to stay

proceedings pending the disposition of ongoing post-conviction proceedings in state court. In December 2015, Cook amended his petition to add three new claims related to the ballistics evidence he received in response to his FOIA request. The stay remained in effect while Cook asserted these new claims in state court.

In October 2022, the Court lifted the stay after the parties reported that the state court proceedings had concluded. Cook also filed in October two documents entitled petition for habeas corpus. The Court struck the documents, informing Cook that he cannot amend his petition without first obtaining leave of court, and gave Cook an opportunity to file a motion to amend. In response, Cook expressly advised the Court that he did not intend to amend his pending habeas corpus petition. After the state responded to Cook's petition, Cook filed another document entitled petition for habeas corpus. The Court reminded Cook that he had not sought or obtained leave of court to file an amended habeas corpus petition and considered the document Cook filed as his reply.

### Discussion

A petitioner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Construing liberally Cook's habeas corpus petition, the Court identifies seven claims: (1) the trial court erred in admitting Cook's confession because it was involuntary given his injuries; (2) the trial court erred in admitting Cook's confession to Bartik because it was fabricated; (3) his trial counsel was ineffective for failing to present character witnesses at sentencing; (4) his post-conviction counsel was ineffective for not making the claim that his trial counsel was ineffective at sentencing;

(5) the trial court erred in denying a continuance for Cook to investigate Bell's pre-existing wounds; (6) the trial court erred in not allowing Cook to cross-examine Dr. Dunigan and Dr. Areford; and (7) new evidence that Bartik fabricated confessions in other cases proves that Cook is actually innocent.

In his amended petition, Cook adds the following four claims: (1) actual innocence based on newly discovered ballistics evidence (claim 8); (2) the prosecution improperly withheld the ballistics evidence (claim 9); (3) the prosecution failed to prove him guilty beyond a reasonable doubt because it did not prove Bell's cause of death (claim 10); and (4) a false stipulation that the fatal bullet matched the murder weapon was introduced at trial (claim 11).

In Cook's reply brief, he additionally asserts four more claims: (1) his trial counsel was ineffective for failing to investigate and present the testimony of Scruthens (claim 12); (2) his appellate counsel was ineffective (claim 13); (3) DNA tests were needed to establish his innocence (claim 14); and (4) the state never answered his motions for relief of judgment and arrest of judgment, denying him the opportunity to respond (claim 15).

## A. Statute of limitations

First, the state contends that Cook's petition should be denied because it is untimely. Under 28 U.S.C. § 2244(d)(1), there is a one-year period of limitations for filing a habeas corpus petition. The one-year period runs from the latest of four possible dates: (A) the date on which the judgment became final due to the conclusion of, or expiration of the time for seeking, direct review; (B) the date on which a state obstruction to the filing was removed on constitutional grounds; (C) the date on which a

constitutional right relied on was initially recognized by the Supreme Court; or (D) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2244(d)(1)(A)-(D).

The limitations period does not begin to run until after the ninety-day period when a petition for certiorari may be filed on direct review even if (as in this case) the habeas corpus petitioner did not file such a petition. *See Anderson v. Litscher*, 281 F.3d 672, 674–75 (7th Cir. 2002). The one-year clock stops during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgement or claim is pending." 28 U.S.C. § 2244(d)(2). The clock then starts again as soon as the state's highest court issues a final ruling on the post-conviction proceedings; the stoppage of the clock on collateral review does not include the time available to petition the U.S. Supreme Court for certiorari. *See Lawrence v. Florida*, 549 U.S. 327, 331, 337 (2007). Any state collateral proceedings that begin after the one-year limit for federal habeas petitions has expired are "irrelevant" for stopping the clock. *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009). Finally, the mailbox rule applies to *pro se* habeas petitions, such that "a petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk." *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999).

In this case, Cook's direct review of his conviction was finalized by the Illinois Supreme Court on November 24, 2004. After adding the ninety days during which he could have petitioned for review by the Supreme Court, the time for seeking direct review expired on February 22, 2005, and the one-year period for Cook to file a habeas corpus petition in federal court began on that date. *See Anderson*, 281 F.3d at 674-75.

The clock paused when Cook petitioned for post-conviction review on May 4, 2005, after seventy-one days of the one-year limitations period had elapsed. The clock started again once the Illinois Supreme Court denied Cook's PLA on the post-conviction petition on September 25, 2013. From this point, Cook had 294 days remaining on the one-year period, as the post-conviction proceedings stopped but did not reset the time limit. *See De Jesus*, 567 F.3d at 943. Thus, the one-year period for filing a federal habeas corpus petition expired on July 16, 2014.

Cook's various state collateral motions did not suspend the running of the one-year limitations period because they are not "properly filed application[s] for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). Cook's motions for forensic testing under 725 ILCS 5/116–3 are not motions for "collateral review of the underlying judgment and therefore do[] not toll the statute of limitations." *Price v. Pierce*, 617 F.3d 947, 952 (7th Cir. 2010). And Cook's motions filed after July 2014 are "irrelevant" for purposes of calculating the timeliness of his federal habeas corpus petition. *De Jesus*, 567 F.3d at 943.

That leaves Cook's May 2011 motion for relief of judgment under 735 ILCS 5/2-1401 and motion in arrest of judgment, his July 2012 motion for leave to file a successive post-conviction petition, and his August 2013 post-trial motion based on prosecutorial misconduct. None were properly filed within the meaning of section 2244(d)(2). "[T]he period during which a request to file a successive petition is pending in Illinois state court does not toll the statute of limitations on actions under § 2254 unless permission is granted." *Martinez v. Jones*, 556 F.3d 637, 639 (7th Cir. 2009). Because the state trial court denied Cook's 2012 motion for leave to file a successive

15

post-conviction petition, this motion does not stop the one-year clock. The remaining motions were all denied by the state court as untimely. "A collateral attack that is untimely under state law is not 'properly filed.'" *Brooks v. Walls*, 279 F.3d 518, 521 (7th Cir. 2002). Thus, none of Cook's collateral motions toll the statute of limitations under § 2244(d)(2).

The only other possible date to start the limitations period is the one supplied by 28 U.S.C. § 2244(d)(1)(D), specifically, "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Although Cook did not argue for a later start date, he does allege in his petition that the evidence that Bartik fabricated confessions and the ballistics reports were discovered later.

Even assuming that the evidence that Bartik fabricated confessions could not have been discovered sooner, the factual predicate for Cook's claim that Bartik fabricated his confession "is what happened to [Cook] himself (as opposed to other suspects)." *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005), *abrogated on other grounds by McQuiggin v. Perkins*, 569 U.S. 383 (2013). Cook therefore "knew 'the factual predicate of [his] claim' before his trial" because he knew before his trial—if it was so—that Bartik fabricated his confession. *Id.* (alteration in original). Although the evidence that Bartik fabricated confessions in a similar way in other cases may corroborate Cook's claim, "[s]ection 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available." *Id.*; *see also Deloney v. McCann*, 229 F. App'x 419, 422 (7th Cir. 2007) ("The statute of limitations began running when Deloney became aware of the facts giving rise to his claim, not when he obtained the evidence to

support it.").  Thus, this evidence does not provide a later start date to the statute of limitations period for any of Cook's claims.

Regarding the ballistics evidence, the parties contest whether this evidence was newly discovered in 2015.  Cook alleges that he first discovered the evidence when the Illinois State Police provided it to him in May 2015 in response to his FOIA request.  The state contends that Cook likely learned of this evidence sooner because it "is clearly part of the State's pre-trial investigation in this case, and there is no indication that it was not submitted to the defense counsel as part of the trial discovery."  Resp. Br. at 20 (quoting dkt. no. 127-66 at 12).  The reports themselves were created in 1999.  Cook has not provided any evidence that these reports were not provided to defense counsel at trial, as the state trial court repeatedly found.

"When questions about AEDPA's statutory tolling arise," the Seventh Circuit "employ[s] a 'burden shifting' framework requiring the petitioner to make a threshold evidentiary showing before shifting the burden of proof to the state."  *Ray v. Clements*, 700 F.3d 993, 1008 (7th Cir. 2012) ("If the state raises an AEDPA statute of limitations defense, the petitioner must come forward with some evidence to support his claim that . . . 365 countable days have not elapsed from the time his state-court judgment became final to the time he filed his federal habeas petition."); *see also Arroyo v. Brannon*, No. 14 C 7817, 2015 WL 4554758, at *2 (N.D. Ill. July 28, 2015) ("It is Arroyo's burden to show that one of the exceptions in § 2244(d)(1)(B), (C), or (D) applies.").  Cook has failed to make a threshold evidentiary showing that § 2244(d)(1)(D) applies because he has not provided any evidence that the ballistics reports could not have been discovered until 2015.  This evidence therefore does not

provide a later start date to the limitations period for any of Cook's claims.

Cook's federal habeas corpus petition reflects that it was placed in the mail on July 22, 2014—six days beyond the expiration of the one-year limit under 28 U.S.C. § 2244(d)(1). The petition is therefore untimely.

A habeas corpus petition that is filed after the statute of limitations expires may be timely by way of equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 634 (2010). To be entitled to equitable tolling, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal quotation marks omitted). Cook bears the burden of establishing both points. *See Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014). Because Cook has made no attempt to make this showing, the Court concludes that equitable tolling does not apply.

Another equitable exception to section 2244(d)(1)'s time limit is actual innocence. *See Arnold v. Dittmann*, 901 F.3d 830, 836 (7th Cir. 2018). Although Cook does not argue for this exception, he does assert a freestanding actual innocence claim. Interpreting his filings liberally, "the allegations of actual innocence" can do "double duty in this case both as a gateway to belated habeas review and as a substantive basis for granting the writ." *Id.* (internal quotation marks omitted). To "evaluat[e] a claim of actual innocence as a gateway to review of a habeas claim that would otherwise be foreclosed by untimeliness," the Court applies the *Schlup* standard. *Id.* In other words, the claim "must be both credible and founded on new evidence," and Cook must "show that, in light of this new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Id.* at 836–37 (citing *Schlup*

*v. Delo*, 513 U.S. 298, 324–27 (1995)).

Neither the evidence that Bartik fabricated confessions in other cases nor the ballistics reports establish that no reasonable juror would have found Cook guilty beyond a reasonable doubt.

First, Bartik did not testify at trial, nor did the prosecution introduce any statements that Cook purportedly made to him. Rather, the prosecution introduced evidence of Cook's statements to three other police officers and the assistant state's attorney Key. Cook does not allege that Bartik's purported misconduct affected these statements. Furthermore, as the Illinois appellate court found, Cook's assertion that his confession to Bartik was the only evidence of his intent to commit first-degree murder is incorrect. "[T]here was plenty of other evidence from which a jury could have concluded that [Cook] intended to kill Bell," including Hunt's testimony, the evidence that the police found Cook strangling Bell, and evidence that Cook hid the murder weapon. *Cook*, 2015 IL App 123236-U, ¶ 22.

Second, the ballistics evidence is not exculpatory because, contrary to Cook's assertion, it does not show that the 38-caliber gun was not the murder weapon. Rather, the report Cook references merely states that of the bullets submitted for analysis, one did not match the 38-caliber gun, others were "not suitable for microscopic comparison," and one "could not be identified or eliminated as having been fired" from the 38-caliber gun. Dkt. no. 127-49 at 11–12. The fact that some bullets did not match the murder weapon is consistent with the finding in Bell's medical report that Bell's body contained "[m]ultiple old bullets and bullet fragments." Dkt. no. 127-49 at 20. And, in any event, the evidence at trial, including Cook's own testimony, clearly established that he pulled

19

out a gun while fighting with Bell and that the gun ultimately shot Bell.

In sum, Cook has failed to meet the *Schlup* standard. Cook has therefore not established any exception to the statute of limitations. Thus, Cook's petition for a writ of habeas corpus was not timely filed.

## B. Procedural default

Even if Cook's petition were timely, nearly all of his claims are procedurally defaulted. "There are two distinct ways in which a state prisoner can procedurally default a federal claim." *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). First, "where the state courts declined to address a petitioner's federal claims because the petitioner did not meet state procedural requirements," the claims are defaulted because "the state court judgment rests on an independent and adequate state ground." *Id.* Second, a claim is defaulted where the petitioner did not "fairly present the federal issue for the state court's review." *Id.* (internal quotation marks omitted). "In Illinois, which has a two-tiered appellate review system, a petitioner must present a claim at each level of the state court system, either on direct appeal or in post-conviction proceedings." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013).

Cook's claim that his confession was coerced (claim 1) was presented through one complete round of state court review. Additionally, on appeal of his post-conviction petition, Cook raised the claim that his post-conviction counsel was ineffective for failing to claim that his trial counsel was ineffective at sentencing (claim 4). But Cook's remaining claims either were not presented through each level of the state court system (claims 3 and 5), or they were presented in collateral motions or motions for leave to file a successive post-conviction petition that were denied on state law procedural grounds

20

(claims 2 and 6-15). Thus, the Court concludes that these claims (claims 2, 3, and 5-15) are procedurally defaulted. *See Thomas*, 822 F.3d at 385 (holding that the state court's denial of a successive post-conviction petition for failure to show cause under 725 ILCS 5/122-1(f) is a "state procedural rule" that "preclud[ed] federal habeas review"); *Trotter v. Pfister*, No. 08 C 2917, 2019 WL 5695834, at *3 (N.D. Ill. Nov. 4, 2019) ("The state court's reliance on Trotter's failure to satisfy Illinois' statutory requirement of cause and prejudice constitutes an independent and adequate state procedural ground that bars this Court's review.").

A petitioner can overcome procedural default by "demonstrat[ing] 'cause for the default and actual prejudice as a result of the alleged violation of federal law,'" or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Wilson v. Cromwell*, 69 F.4th 410, 421 (7th Cir. 2023) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "[T]he miscarriage of justice exception applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted" under the *Schlup* standard. *Id.* (internal quotation marks omitted). Cook does not expressly argue for either exception. In any event, as explained above, Cook has not met the *Schlup* test.

Nor has Cook established cause or prejudice, both of which would be required to excuse his procedural default. "'[A] showing that the factual or legal basis for a claim was not reasonably available to counsel would constitute cause' for excusing procedural default." *Conley v. United States*, 5 F.4th 781, 799 (7th Cir. 2021) (alteration accepted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). As explained above, however, the factual basis of Cook's claim that Bartik fabricated his confession was reasonably

available at trial.  Further, as previously explained, Cook has not shown that the ballistics reports, which form the factual basis of his amended claims, were not shared with the defense at trial.  Thus, he has not established cause for the default of these claims.

Cook also cannot establish cause for the default of his claim that trial counsel was ineffective for failing to present character witnesses at sentencing.  Although he blames his post-conviction counsel for not raising this claim in his initial post-conviction petition, "attorney error in postconviction proceedings is not cause to excuse a procedural default" in Illinois.  *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018).  And Cook's claim on appeal of the dismissal of his post-conviction petition that his post-conviction counsel was ineffective did not fairly present the underlying claim of ineffective assistance of his trial counsel because that claim is "separate and independent."  *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("[T]he fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise.").

At certain points in Cook's reply, he appears to assert as cause for various defaults the fact that his appellate counsel failed to raise the issues on direct appeal.  But ineffective assistance of appellate counsel cannot serve as cause for the other defaults because that claim is itself defaulted.  *See id.* ("[A] claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for a procedural default of another claim.").

For Cook's remaining claims, he does not argue, nor does the Court perceive,

any basis to establish cause or prejudice. In sum, claims 2, 3, and 5 through 15 are procedurally defaulted.

## C.    Merits

As noted above, two of Cook's claims (claims 1 and 4) are not defaulted. In claim 1, Cook contends that his confession was involuntary due to his head and eye injuries from his fight with Bell. As previously described, the Illinois appellate court rejected this contention on direct appeal. The state contends that under section 2254(d), Cook is not entitled to habeas relief on this claim. The Court agrees.

Section 2254(d) provides that a federal court may issue a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to Supreme Court precedent if it "applies a legal standard inconsistent with governing Supreme Court precedent or contradicts the Supreme Court's treatment of a materially identical set of facts." *Rodriguez v. Gossett*, 842 F.3d 531, 537 (7th Cir. 2016). "A state court unreasonably applies Supreme Court precedent if it identifies the correct legal rule but applies it in a way that is objectively unreasonable." *Id.* To be unreasonable, "the state court's ruling must be 'so lacking in justification that there was an error beyond any possibility of fairminded disagreement.'" *Winfield v. Dorethy*, 956 F.3d 442, 451 (7th Cir. 2020) (alteration accepted) (quoting *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013)).

To determine whether statements were made voluntarily, the Supreme Court instructs courts to "assess[] the totality of all the surrounding circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The Illinois appellate court correctly applied that standard by "examin[ing] the totality of the circumstances" and determining "that [Cook]'s inculpatory statements were voluntary and were not obtained in violation of *Miranda*." *Cook*, 352 Ill. App. 3d at 121–22, 815 N.E.2d at 892. The court reasonably found that the fact that Cook refused an offer to be transported to the hospital and only received a pain reliever and bandage for his injuries suggests that his injuries were not as severe as he claimed. There was also no evidence that Cook was denied medical treatment unless he confessed. The court also reasonably concluded that Cook "was fully informed of his *Miranda* rights and knowingly and intelligently waived those protections" based on the evidence that Cook received multiple *Miranda* warnings during his interrogation. *Id.* at 121, 815 N.E.2d at 891.

In Cook's other non-defaulted claim, claim 4, Cook asserts that his post-conviction counsel provided ineffective assistance. This claim also fails because it is non-cognizable in a federal habeas corpus proceeding. Because "[t]here is no constitutional right to an attorney in state post-conviction proceedings," Cook "cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752; *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

Cook's remaining claims are denied because they are procedurally defaulted as explained above. Even if the claims were not defaulted, however, they would fail on the

merits.

First, Cook's claim that Bartik fabricated his confession (claim 2) lacks merit because any statements purportedly made to Bartik by Cook were not introduced at his trial.[2] As previously noted, the prosecution instead introduced evidence regarding Cook's statements to three other officers and Key, which Cook does not allege to have been affected by Bartik's purported misconduct. "[A]n act of evidence fabrication doesn't implicate due-process rights *unless* the fabricated evidence is later used to deprive the criminal defendant of her liberty in some way." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (alteration accepted) (internal quotation marks omitted).

In claim 3, Cook asserts that his trial counsel provided ineffective assistance for failing to present character witnesses at sentencing. To succeed on an ineffective assistance of counsel claim, Cook must show that his counsel's representation was deficient in that it fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). "[C]ounsel's strategic choices," including "whether to submit mitigation evidence and what type of evidence to submit," "generally do not support a claim of ineffective assistance." *Patrasso v. Nelson*, 121 F.3d 297, 304 (7th Cir. 1997). Cook has not shown that his trial counsel failed to "make a significant effort, based on reasonable investigation and logical argument, to mitigate his client's punishment." *Id.* at 303–04.

---

[2] The trial transcript reflects that Bernatek testified that after Cook met with him, Cook met with Bartik for "approximately 25 minutes," but Bernatek did not testify regarding anything that happened during this meeting. Dkt. no. 127-3 at 26:14–16. Bernatek testified that after Cook spoke with Bartik, he met with Bartik, and then spoke with Cook again, at which point Cook told him that "he had lied and wanted to tell the truth." *Id.* at 28:23–29:1.

As the state points out, all but one of the affidavits from Cook's friends and family stated that they discussed their desire to be a character witness at his sentencing with his trial counsel.  This suggests that Cook's counsel did investigate these witnesses and determined "that the testimony the witnesses would give might on balance harm rather than help the defendant."  *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997).  And Cook has offered no evidence suggesting that counsel's failure to call these witnesses was anything other than a strategic choice.  The Court concludes that Cook has failed to show that his trial counsel's performance was deficient in this regard.[3]

In claims 5 and 6, Cook contends that the trial court erred by denying him a continuance to investigate Bell's pre-existing wounds and denying him the opportunity to cross-examine Dr. Dunigan and Dr. Areford.  Both claims lack merit.

First, the record reflects that the defense did not request a continuance at trial to investigate Bell's pre-existing wounds, so there was no request for the trial court to deny.  Even if the trial court had made an error, it would not entitle Cook to relief unless he also established "actual prejudice," meaning that "the error had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).  Cook has not done so here because he has not shown that his investigation would have discovered relevant evidence.

Second, Dr. Dunigan and Dr. Areford's testimony was presented via stipulation.

---

[3] The state also argued that Cook could not show prejudice because his mother made a statement in mitigation at his sentencing, but the state did not cite to the record of the sentencing hearing to support this assertion.  The Court therefore declines to consider this point.

By agreeing to a stipulation, defense counsel agreed to waive Cook's right to cross-examine Dr. Dunigan and Dr. Areford.  The Seventh Circuit has held that "a defendant's attorney can waive his client's Sixth Amendment confrontation right 'so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy.'"  *United States v. Cooper*, 243 F.3d 411, 418 (7th Cir. 2001) (quoting *United States v. Reveles*, 190 F.3d 678, 683 n.6 (5th Cir.1999), *abrogated on other grounds by United States v. Vargas-Ocampo*, 747 F.3d 299 (5th Cir. 2014)).  Cook has not shown that he dissented at trial and has offered nothing to suggest that his counsel's decision to agree to the stipulations was not legitimate or prudent.

Cook's final claim in his initial petition is that the evidence that Bartik fabricated confessions in other cases proves that Cook did not have the requisite intent for first-degree murder.  The state contends that freestanding actual innocence claims are non-cognizable.  *See Arnold*, 901 F.3d at 837 ("To date, an assertion of actual innocence based on evidence post-dating a conviction has not been held to present a viable claim of constitutional error.").[4]  Even if it were, as mentioned above, statements made to Bartik were not used at trial to prove Cook's intent.  Instead, significant additional

---

[4] It is possible to interpret Cook's claim as arguing that the evidence of intent at trial was not sufficient to establish this element of first-degree murder beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979) ("[A]n essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.").  Applying the *Jackson* inquiry, however, the Court could not consider the evidence of Bartik fabricating other confessions because it was not "record evidence" at Cook's trial.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, the result under this interpretation of Cook's claim would be the same—the claim lacks merit because there was sufficient evidence at trial of Cook's intent.

27

evidence supported the jury's finding that Cook had the intent to commit first-degree murder, as previously explained.

The four claims asserted in Cook's amended petition lack merit as well. First, Cook claims that newly discovered ballistics evidence proves that he is actually innocent (claim 8). As explained above, the ballistics reports Cook references, even assuming they are new, do not prove his innocence under the *Schlup* standard. If a freestanding claim of actual innocence is even cognizable, it "requires more convincing proof of innocence than *Schlup*." *House v. Bell*, 547 U.S. 518, 555 (2006); *see also Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017) ("If the federal courts will recognize freestanding constitutional claims of actual innocence, however, it is clear that evidence of innocence will need to meet an 'extraordinarily high' threshold." (quoting *Herrera*, 506 U.S. at 392)). Thus, claim 8 fails.

Cook also contends that the prosecution improperly withheld this ballistics evidence (claim 9). But as previously explained, Cook has not provided any evidence to support the proposition that these reports were not shared with defense during trial. Even if the prosecution had withheld the evidence, it would not entitle Cook to relief unless suppression of the ballistics reports "undermines confidence in the outcome of the trial." *Sims v. Hyatte*, 914 F.3d 1078, 1087 (7th Cir. 2019) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). For the reasons noted above, the ballistics reports, which are not exculpatory, do not create "a reasonable probability that, had the evidence been disclosed, the result of [Cook's trial] would have been different." *Id.* (quoting *Kyles*, 514 U.S. at 433).

In claim 10, Cook contends that the prosecution failed to prove him guilty beyond

28

a reasonable doubt because it did not prove Bell's cause of death. An "applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. But the parties stipulated at trial that it was the opinion of the medical examiner, Dr. Areford, that "Bell died of multiple gunshot wounds." Dkt. no. 127-2 at 204:7–8. The fact that, in addition to the diagnoses of two gunshot wounds, Bell's medical report also identified "[m]ultiple old bullets and bullet fragments" does not call into question the cause of his death. Dkt. no. 127-49 at 20.

Cook next argues in claim 11 that the prosecution falsely offered a stipulation at trial that the fatal bullet matched the 38-caliber gun. But Cook does not cite to this stipulation. From the Court's review of the trial record, the parties did not stipulate that any specific bullet matched the murder weapon, but rather that it would be Dr. Areford's opinion that "Bell died of multiple gunshot wounds, and the manner of death was homicide." Dkt. no. 127-2 at 204:7–9. Cook does not explain how this stipulation is false.

Lastly, the additional claims Cook asserts in his reply to the state's response brief lack merit as well. Cook first contends that his trial counsel was ineffective for failing to investigate and present the testimony of Scruthens (claim 12). Cook references a statement written by Scruthens in 1999, in which he notes that Bell had a hammer earlier on the day the shooting took place. Scruthens's statement explains that he left Cook's apartment after Bunch put the gun on the table and learned the following day that Bell had been killed.

"A lawyer's decision to call or not to call a witness is a strategic decision

29

generally not subject to review." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). "An outright failure to investigate witnesses, however, is more likely to be a sign of deficient performance." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). Cook does not provide any evidence that his trial counsel failed to investigate Scruthens. As the Illinois appellate court noted in holding that Cook had not established cause to raise this claim in a successive post-conviction petition, the trial record indicates that defense counsel expected Scruthens to testify as a prosecution witness. Defense counsel mentioned in her opening statement at trial that Scruthens, along with Hunt, saw Bell with a hammer earlier on the day the crime occurred, suggesting that counsel "was prepared to elicit similar testimony from Scrutchens [sic] if he had been called as a witness by the State." *People v. Cook*, 2022 IL App 210436-U, ¶ 48 (dkt. no. 127-79). Thus, the record does not reflect that counsel failed to investigate Scruthens as a witness. "If counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic." *Best*, 426 F.3d at 945; *see also Pollock v. United States*, 710 F. App'x 253, 256 (7th Cir. 2018) ("[Counsel] had no obligation to call every potential witness, particularly on a collateral issue.").

Even if Cook's defense counsel had performed deficiently by failing to call Scruthens as a witness, Cook could not establish prejudice. "A trial counsel's deficient performance does not prejudice the defense when his performance might possibly have had a conceivable effect on the outcome of the case." *Taylor v. Bradley*, 448 F.3d 942, 950 (7th Cir. 2006) (internal quotation marks omitted). Rather, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694).

Cook emphasizes that Scruthens's statement notes that he saw Bell with a hammer earlier in the day, which supports his testimony at trial that he shot Bell in self-defense after Bell struck him with a hammer. But Scruthens did not witness the altercation between Bell and Cook that led to the shooting. Evidence that Bell was seen with a hammer earlier that day is not reasonably likely to have affected the outcome given the substantial other evidence of Cook's intent to kill Bell described above. Moreover, Cook never stated in any of his confessions that Bell was armed with a hammer, and Hunt testified that she *was* present for Cook's second fight with Bell and did not recall Bell having a hammer during the altercation. Given this evidence, Scruthens's corroboration of a minor point "would not likely have changed the outcome in the case because there was substantial, independent evidence to support the jury's verdict." *Stuckey v. Hulick*, 258 F. App'x 891, 895 (7th Cir. 2007); *see also Taylor*, 448 F.3d at 950 (7th Cir. 2006) ("[I]neffective assistance of trial counsel d[oes] not prejudice the case where overwhelming evidence point[s] to the defendant's guilt . . . ."); *Carter v. Duncan*, 819 F.3d 931, 949 (7th Cir. 2016) (holding that the state court's assessment that prejudice was not established was not unreasonable "[c]onsidering the limited potential value" of the proffered testimony).

In claim 13, Cook contends that his appellate counsel provided ineffective assistance. He does not articulate, however, how his counsel failed to properly assist him. Indeed, the supporting facts Cook provides relate to his post-conviction proceedings. Without a decipherable theory regarding how his appellate counsel provided ineffective assistance, this claim cannot entitle Cook to habeas relief. *See McGhee v. Watson*, 900 F.3d 849, 853 (7th Cir. 2018) ("McGhee had to articulate *how*

his counsel failed him in order to alert the district judge and the State of the specific grounds for relief under § 2254."). At other places in Cook's reply, he asserts appellate counsel's failure to raise various claims "in an effort to show that . . . the claim[s] his habeas petition *actually* raised" were "adequately presented in state court." *Id.* "The[se] statements are not distinct claims for relief." *Id.* In any event, because the Court has concluded that all of Cook's underlying claims lack merit, appellate counsel was not ineffective in failing to assert those claims. *See Carter v. United States*, 133 F. App'x 321, 327 (7th Cir. 2005) ("Because, as discussed above, none of Carter's ineffective-assistance-of-trial-counsel claims had merit, appellate counsel was not deficient for deciding not to pursue those claims.").

Cook also argues that DNA testing was needed to prove his innocence (claim 14). As previously described, Cook's motions for forensic testing under 725 ILCS 5/116-3 were denied for reasons pertaining to state law. It is possible that Cook's claim could be interpreted as challenging the sufficiency of the evidence at trial, but the Court has already concluded that there was sufficient record evidence of Cook's guilt. And the asserted missing evidence that Cook identifies—DNA from the crime scene and from items belonging to Cook, Bell, and Bunch—does not affect the sufficiency of the evidence of Cook's guilt because identification was not at issue at trial.

Lastly, Cook contends that because the state never answered his motions for relief of judgment and arrest of judgment, he was denied the opportunity to respond to the state's arguments (claim 15). This is not a cognizable claim because it does not relate to his conviction. *See Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) ("Unless state collateral review violates some independent constitutional right, such as

32

the Equal Protection Clause, errors in state collateral review cannot form the basis for federal habeas corpus relief.") (citations omitted). Moreover, Cook has not shown that the state trial court erred in the first place. *See People v. Laugharn*, 233 Ill. 2d 318, 323, 909 N.E.2d 802, 805 (2009) (observing that a section 2–1401 petition can be dismissed *sua sponte* after thirty days).

In sum, each of Cook's claims are either non-cognizable or otherwise fail on the merits. Moreover, most of the claims are procedurally defaulted, and all of the claims are untimely. For these reasons, the Court denies Cook's habeas corpus petition.

**D.     Certificate of appealability**

Under 28 U.S.C. § 2253(c)(1), a petitioner seeking a writ of habeas corpus may appeal from the Court's judgment only if he obtains a certificate of appealability (COA). To obtain a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). When a district court denies a habeas petition on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

The Court's determinations that Cook's claims are untimely, procedurally defaulted, non-cognizable, and/or lack merit are not fairly debatable. The Court

therefore declines to issue a COA.

## Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment denying Rory Cook's petition for a writ of habeas corpus. The Court declines to issue a certificate of appealability.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   August 14, 2023